UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| T.L. and C.J., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CAUSE NO. 1:23-cv-000318 |
| ) | |
| TERRENCE DICKERSON, in his individual and ) | |
| official capacities as Warden of the Marion County ) | |
| Jail II; TERRELL WILLIAMS, in his individual ) | |
| and official capacities as Chief of Security of the ) | |
| Marion County Jail II; CYNEQUA UNDERWOOD ) | |
| in her individual capacity; MADELINE VICARI, ) | |
| in her individual capacity; and CORECIVIC, INC. ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

Come now Plaintiffs, T.L. and C.J, by counsel, Stephen M. Wagner and Laura M. Swafford of WAGNER REESE, LLP, and for their cause of action against the Defendants, Terrence Dickerson, in his individual and official capacities as Warden of the Marion County Jail II (hereinafter "Dickerson"); Terrell Williams, in his individual and official capacities as Chief of Security of the Marion County Jail II (hereinafter "Williams"); Cynequa Underwood, in her individual capacity (hereinafter "Underwood"); Madeline Vicari, in her individual capacity (hereinafter "Vicari"); and CoreCivic Inc. (hereinafter "CoreCivic"), allege and state as follows:

**JURISDICTION AND VENUE**

1. This is a civil rights action brought for violations of the Fourth, Eighth, and Fourteenth Amendment of the Constitution of the United States of America made actionable pursuant to 42 U.S.C. § 1983.

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 as well as 42 U.S.C. §§ 1983 and 1988. Plaintiffs further invoke supplemental jurisdiction of this Court to hear and decide Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §1367.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391.

## PARTIES

4. At all relevant times herein, Plaintiffs, T.L. and C.J., were married and citizens of the United States of America, State of Indiana, City of Indianapolis, County of Marion.

5. At all relevant times herein, Defendant, CoreCivic, was a foreign for profit corporation providing management services to correction and detention facilities at various correctional facilities in Indiana and in other states.

6. At all relevant times herein, Defendant, CoreCivic, was contracted to operate the Marion County Jail II, located at 730 E. Washington Street, City of Indianapolis, County of Marion, State of Indiana.

7. At all relevant times herein, Defendant, CoreCivic, was acting under color of state law.

8. At all relevant times herein, Defendant, Dickerson, was employed by CoreCivic as the Warden of the Marion County Jail II, and was acting under color of state law. Defendant, Dickerson, was in charge of, among other duties, overseeing the operation of the Marion County Jail II, including adequately staffing the Jail with properly trained jail officers so as to maintain the safety and well-being of the individuals housed at the Jail and ensuring the Jail was prepared for foreseeable emergencies such as power outages. Defendant, Dickerson, is sued in his in his individual and official capacities.

9. At all relevant times herein, Defendant, Williams, was employed by CoreCivic as the Chief of Security of the Marion County Jail II, and was acting under color of state law. Defendant, Williams, was in charge of, among other duties, overseeing the operation of the Marion County Jail II, including adequately staffing the Jail with properly trained jail officers so as to maintain the safety and well-being of the individuals housed at the Jail and ensuring the Jail was prepared for foreseeable emergencies such as power outages. Defendant, Williams, is sued in his in his individual and official capacities.

10. At all relevant times herein, Defendants, Underwood and Vicari, were employed by CoreCivic and were assigned to work at the Jail. Underwood and Vicari were acting under color of state law and within the scope of their authority and employment, and as agents for Dickerson, Williams, and CoreCivic. They are sued in their individual capacity.

## BACKGROUND

11. On January 24, 2021, T. L. was arrested and booked into the Marion County Jail II (hereinafter "the Jail"), which was located at 730 E. Washington Street, Indianapolis, Indiana, and was operated by CoreCivic.

12. During his detainment, T.L. was housed in a large, open style dormitory. The individual cells in the dormitory were seldom locked and inmates were free to roam the cellblock day and night.

13. During all relevant times herein, the Jail maintained a backup generator in the case of a power outage.

14. The Jail also maintained the Uninterruptible Power Supply (U.P.S.), which is a piece of equipment used to run the security equipment in the Jail in the event of a power outage or failure of the backup generator.

15. In the event of a power outage and/or generator failure, the U.P.S. could keep the cameras and monitors in the Central Control room working to allow the Jail to monitor the inmates.

16. In the early morning of February 22, 2021, Indianapolis Power and Light (IPL) notified the Jail that a wire on a nearby power source was frozen due to recent weather conditions.

17. IPL advised the Jail that in order to fix the frozen wire they would need to turn off the power.

18. IPL turned off the power at around 2:56 a.m.

19. When IPL turned off the power, the Jail's backup generator did not activate.

20. The Jail's backup generator did not activate because it was poorly maintained.

21. The Jail did not maintain emergency light fixtures throughout the facility.

22. As a result, the Jail was plunged into complete darkness.

23. Without emergency light fixtures and/or an operating backup generator, the Jail remained in total darkness for 68 minutes.

24. Additionally, the Jail did not have adequate battery power to operate the U.P.S.

25. Without an operating backup generator or adequate battery power to operate the U.P.S., there was no power source to power the security system in the Jail, including the surveillance and security cameras.

26. Without a security system, the Defendants could not supervise the inmates through video surveillance.

27. Since the security system was not functioning, Underwood directed Vicari to gather all staff and complete welfare checks on the staff and inmates in an attempt to ensure their safety.

28. Some CoreCivic employees did not have flashlights and could not assist in ensuring the safety of the inmates.

29. When the Vicari began conducting these welfare checks, she "witnessed inmates at the windows of all the dorms banging, screaming, and covered in blood."

30. Vicari notified Underwood that inmates were at the dorm windows actively bleeding.

31. Despite having actual knowledge that the inmates were attacking and assaulting each other, Underwood and Vicari, along with CoreCivic employees and officers refused to intervene and stop the attacks.

32. At 3:22 a.m., after 26 minutes of complete darkness, CoreCivic medical staff finally called 911 to request assistance.

33. The power was restored around 4:04 a.m.; however, the power would only come on for 1-2 minutes and then turn off again.

34. The power was fully restored at 4:39 a.m.

35. As witnessed by Vicari, during the blackout, a group of inmates were assaulting and attacking other inmates in the dormitory where T.L. was housed.

36. These inmates attacked and beat T.L.

37. These inmates sodomized T.L. with a broomstick and hit him in the head, knocking him unconscious.

38. During the blackout, the group of inmates injured at least twelve (12) other inmates, ten (10) of which were transported to the hospital after the power was restored, including T.L.

39. After the incident, the backup generator was inspected and found to have been poorly maintained.

40. Specifically, the backup generator's switch was dirty and did not have sufficient coolant in it to properly operator on the day of the incident.

41. Additionally after this incident, from February 26 – March 1, 2021, the Marion County Sheriff's Internal Affairs Office (hereinafter the "Internal Affairs Office") reviewed and evaluated the Jail and found numerous deficiencies by CoreCivic, which they found to be the reason for the extended blackout and loss of security at the Jail.

42. During their evaluation, the Internal Affairs Office provided recommendations to the Jail to ensure an incident like the one described herein could be avoid in the future and allowed the Jail to agree to the recommendations provided.

43. Specifically, the report stated as follows:

    a.

### HUMAN RESOURCES (PERSONNEL)

During the review we identified one finding: The MCJII personnel vacancies should be staffed as soon as possible. The 63 vacancies CoreCivic currently have could've assisted the in day-to-day activities and response to the incident on February 22, 2021 during the power failure.

**Issue:** CoreCivic currently have 63 vacant positions at the MCJII facility which puts their staffing levels down by 28.80 percent.

    **Recommendation 1:** CoreCivic should ensure they add staffing to assist with the hiring practice of personnel to be fully staffed at MCJII.

    **MCJII Response:** Agree.

    b.

**Issue:** The review revealed when a power failure occurs by IPL or the building generator power source, the MCJII do not have emergency light fixtures located throughout the facility to assist in lighting.

    **Recommendation 2:** CoreCivic should ensure emergency light fixtures are purchased and installed in various areas throughout the facility. CoreCivic has ordered 35 emergency light fixtures to be installed in various areas throughout the four levels of the facility.

    **MCJII Response:** Agree.

   c.

> **Issue:** The review revealed when a power failure occurs by IPL or the building generator power source, MCJII did not have adequate battery power to operate the U.P.S. The U.P.S. is a piece of equipment used to run the security equipment in the event of loss of power by IPL or the failure of the generator. The U.P.S. keeps the cameras and monitors in Central Control working. The source of energy runs on 20 batteries and can supply power for approximately fifty-five minutes.
>
>  **Recommendation 3:** CoreCivic should ensure 20 batteries are purchased to run the U.P.S. Security equipment and to maintain and monitor the batteries regularly.
>
>  **MCJII Response:** Agree.

   d.

> **Issue:** Some CoreCivic employees did not have flashlights available when the power outage occurred at MCJII facility.
>
>  **Recommendation 7:** Ensure flashlights are purchased and kept in secured area or emergency box to disseminate to employees during power outage. Ensure batteries are fresh and spot checked to avoid corrosion in flashlights.
>
>  **MCJII Response:** Agree.

## **CLAIMS FOR RELIEF**

### **Count I – 42 U.S.C. § 1983 Claim for Deliberate Indifference Against Defendants, Underwood and Vicari**

44. Plaintiffs hereby incorporate by reference paragraphs 1 through 43 of their Complaint for Damages and Jury Demand as if fully set forth herein.

45. During T.L.'s detainment in the Jail, Defendants, Underwood and Vicari, had a duty to protect T.L. from harmful assaults inflicted by other detainees.

46. Defendants, Underwood and Vicari, had actual knowledge knew assaults were occurring on inmates in T.L.'s dormitory but did nothing to prevent said assaults.

47. Defendants, Underwood and Vicari, were deliberately indifferent to the substantial risk of T.L. being sexually assaulted, which demonstrates a total lack of regard for his right to be free from unnecessary and unlawful bodily harm.

48. The acts and omissions of the Defendants, Underwood and Vicari, as described herein were done willfully, wantonly, and maliciously, and with such reckless disregard of the consequences as to reveal a conscious and deliberate indifference to the substantial risk of the T.L. being sexually assaulted, which shocks the conscience and resulted in his injuries and damages.

49. Defendants, Underwood and Vicari, are responsible for Plaintiff's injuries and emotional distress as a result of their intentional, willful, wanton, and reckless acts and omissions, including but not limited to their failure to monitor, protect, and provide for the safety of the Plaintiff while he was detained.

50. As a direct and proximate result of the aforementioned conduct of Defendants, Underwood and Vicari, Plaintiff was deprived of the rights, privileges, and immunities secured to him under the Constitution and laws of the United States of America, including his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

51. As a direct and proximate result of the wrongful acts and omissions by the Defendants, Underwood and Vicari, as described above, Plaintiff, T.L., suffered serious bodily injuries, pain and suffering, shock, extreme emotional distress, and humiliation.

### Count II -- 42 U.S.C. § 1983 Claim for Deliberate Indifference Against Defendants, Dickerson and Williams, in their individual capacities *only*

52. Plaintiffs hereby incorporate by reference paragraphs 1 through 51 of their Complaint for Damages and Jury Demand as if fully set forth herein.

53. During T.L.'s detainment in the Jail, Defendants, Dickerson and Williams, had a duty to protect T.L. from harmful assaults inflicted by other detainees.

54. Defendants, Dickerson and Williams, had actual knowledge that the Jail was utterly unprepared in the event of a black out.

55. Specifically, Defendants, Dickerson and Williams, knew that the Jail (1) was understaffed; (2) poorly maintained its backup generator; (3) failed to ensure batteries were available to operate the U.P.S., which would run the security equipment in the Jail in the event of a power outage or generator failure; (4) lacked emergency lights throughout the facility; and (5) failed to equip all officers with necessary equipment – i.e. flashlights - in the event of a power outage.

56. Accordingly, Defendants, Dickerson and Williams, were deliberately indifferent to the substantial risk of T.L. being sexually assaulted, which demonstrates a total lack of regard for his right to be free from unnecessary and unlawful bodily harm.

57. The acts and omissions of the Defendants, Dickerson and Williams, as described herein were done willfully, wantonly, and maliciously, and with such reckless disregard of the consequences as to reveal a conscious and deliberate indifference to the substantial risk of the T.L. being sexually assaulted, which shocks the conscience and resulted in his injuries and damages.

58. Defendants, Dickerson and Williams, are responsible for Plaintiff's injuries and emotional distress as a result of their intentional, willful, wanton, and reckless acts and omissions, including but not limited to their failure to monitor, protect, and provide for the safety of the Plaintiff while he was detained.

59. As a direct and proximate result of the aforementioned conduct of Defendants, Dickerson and Williams, Plaintiff was deprived of the rights, privileges, and immunities secured to him under the Constitution and laws of the United States of America, including his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

60. As a direct and proximate result of the wrongful acts and omissions by the Defendants, Dickerson and Williams, as described above, Plaintiff, T.L., suffered serious bodily injuries, pain and suffering, shock, extreme emotional distress, and humiliation.

**Count III – 42 U.S.C. § 1983 *Monell* Claim Against Defendants, Dickerson, in his official capacity as Warden of the Marion County Jail II, and Williams, in his official capacity as Chief of Security of the Marion County Jail II, and CoreCivic, for Lack of Adequate Staffing**

61. Plaintiffs hereby incorporate by reference paragraphs 1 through 60 of their Complaint for Damages and Jury Demand as if fully set forth herein.

62. Defendants, Dickerson, Williams, and CoreCivic, are also liable under 42 U.S.C. § 1983 and the United States Constitution for Plaintiff's injuries which were proximately caused by failing to adequately staff the Jail.

63. Defendants, Dickerson, Williams, and CoreCivic, were the policymakers and decision-makers for the Jail. As such, they had oversight responsibility for ensuring the Jail was adequately staffed.

64. Defendants, Dickerson, Williams, and CoreCivic, had the obligation, power, and authority to adopt policies and prescribe rules, regulations and practices to ensure the Jail was adequately staffed.

65. Defendants, Dickerson, Williams, and CoreCivic, knew the Jail had 63 vacant positions and allowed the Jail to operate understaffed, which created a substantial likelihood that violations of the constitutional rights of inmates, and in particular the Plaintiff, would occur.

66. It was foreseeable that understaffing could lead to security issues in the event of a power outage.

67. Defendants', Dickerson, Williams, and CoreCivic, failure to adequately staff the Jail meant the officers could not enter the dormitories to maintain control and security during the incident described herein.

68. As a result of the inadequate staffing, utter chaos ensued in the dormitory where T.L. was housed.

69. The risk of constitutional violations was so obvious that Defendants' failure adequately staff the Jail reflected deliberate indifference, allowing an inference of institutional culpability.

70. Defendants, Dickerson, Williams, and CoreCivic, failure to adequately staff the Jail allowed Plaintiff, T.L., to be abused.

71. Defendants' failure to create proper policies to ensure the Jail was adequately staffed was objectively unreasonable and demonstrated a conscious or callous indifference to the detainees' rights, and in particular a deliberate indifference to Plaintiff's constitutional rights.

72. As a direct and proximate result of the aforementioned conduct of Defendants, Dickerson, Williams, and CoreCivic, Plaintiff was deprived of the rights, privileges, and immunities secured to him under the Constitution and laws of the United States of America, including his rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

73. As a direct and proximate result of the wrongful acts and omissions Defendants, Dickerson, Williams, and CoreCivic, described above, Plaintiff, T.L., suffered serious bodily injuries, pain and suffering, shock, extreme emotional distress, and humiliation.

**Count IV – 42 U.S.C. § 1983 *Monell* Claim Against Defendant, Dickerson, in his official capacity as Warden of the Marion County Jail II and Defendant, Williams, in his official capacity as Chief of Security of the Marion County Jail II and Defendant, CoreCivic, for Maintaining an Unconstitutional Custom, Pattern, and Practice of Ignoring Emergency Preparedness in the Event of a Power Outage**

74. Plaintiffs hereby incorporate by reference paragraphs 1 through 73 of their Complaint for Damages and Jury Demand as if fully set forth herein.

75. Defendants, Dickerson, Williams, and CoreCivic, are also liable under 42 U.S.C. § 1983 and the United States Constitution for Plaintiff's injuries which were proximately caused by the customs, policies and/or practices constituting intentional, deliberately indifferent, willful, wanton, reckless and/or grossly negligent acts and/or omissions, which resulted in unconstitutional conduct of his agents, officers and/or employees.

76. Defendants, Dickerson, Williams, and CoreCivic, were the policymakers and decision-makers for the Jail. As such, it had oversight responsibility for ensuring the Jail was prepared for a power outage and for ensuring that inmates were protected and not subject to abuse in the event of a power outage.

77. Defendants, Dickerson, Williams, and CoreCivic, had the obligation, power, and authority to adopt policies and prescribe rules, regulations and practices for officers of the Jail to prepare the Jail for a foreseeable power outage. In the event of a power outage, Defendants also had the obligation, power, and authority to adopt policies and prescribe rules, regulations and practices for officers of the Jail to protect inmates and prevent their abuse.

78. Defendants, Dickerson, Williams, and CoreCivic, through both the creation of policies and omission of policies, failed to create necessary and proper polices to prepare the Jail for a power outage and protect Plaintiff and prevent his abuse.

79. Specifically, Defendants, Dickerson, Williams, and CoreCivic, failed to establish, maintain, and enforce proper procedures for the following: (1) ensuring its backup generator was

in good working order; (2) maintaining batteries to operate the U.P.S., which would run the security equipment in the Jail in the event of a power outage or generator failure; (3) installing emergency lights throughout the facility; and (4) equipping all officers with necessary equipment – i.e. flashlights - in the event of a power outage.

80. Defendants, Dickerson, Williams, and CoreCivic, failures described above created a substantial likelihood that violations of the constitutional rights of inmates, and in particular the Plaintiff, would occur.

81. The risk of constitutional violations was so obvious that Defendants' failure to act reflected deliberate indifference, allowing an inference of institutional culpability.

82. Defendants, Dickerson, Williams, and CoreCivic, adopted policies, procedures, practices or customs which allowed Plaintiff, T.L., to be abused.

83. Defendants', Dickerson, Williams, and CoreCivic, failure to create proper policies was objectively unreasonable and demonstrated a conscious or callous indifference to the detainees' rights, and in particular a deliberate indifference to Plaintiff's constitutional rights.

84. As a direct and proximate result of the aforementioned conduct of Defendants, Dickerson, Williams, and CoreCivic, Plaintiff was deprived of the rights, privileges, and immunities secured to him under the Constitution and laws of the United States of America, including his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

85. As a direct and proximate result of the wrongful acts and omissions Defendants, Dickerson, Williams, and CoreCivic, described above, Plaintiff, T.L., suffered serious bodily injuries, pain and suffering, shock, extreme emotional distress, and humiliation.

**Count V – Negligence Claims Against Defendant, CoreCivic**

86. Plaintiffs hereby incorporate by reference paragraphs 1 through 85 of their Complaint for Damages and Jury Demand as if fully set forth herein.

87. In accordance with Indiana statute, Defendant, CoreCivic, was timely served with a Notice of Tort Claim on August 10, 2021, by certified mail.

88. Pursuant to Indiana statute, the Plaintiffs' tort claim notice has been constructively denied because the Defendant has had more than ninety (90) days to investigate the claim but has failed to respond in any manner.

89. At all relevant times, Dickerson, Williams, Underwood, and Vicari and all other unnamed officers/employees were employees of CoreCivic and acting in their course and scope of employment. As such, CoreCivic is liable for the negligent acts of its employees under the doctrine of *respondeat superior*.

90. Defendant, CoreCivic, had a duty to protect T.L. from harmful assaults inflicted by other detainees.

91. Defendant, CoreCivic, was responsible for T.L.'s injuries as the result of its intentional, willful, wanton, reckless, and/or negligent acts and omissions, including but not limited to the failure to adequately staff the Jail, failure to properly maintain the Jail's backup generator, failure to ensure batteries were available to operate the U.P.S., which would run the security equipment in the Jail in the event of a power outage or generator failure, failure to install emergency lights throughout the facility, and failure to equip all officers with necessary equipment – i.e. flashlights - in the event of a power outage.

92. T.L's injuries and damages were also due to the negligence of Defendant, CoreCivic, by failing to provide adequate supervision and security to protect Plaintiff.

93. Defendant, CoreCivic, negligently inflicted emotional distress upon the Plaintiff, T.L., causing him injuries and damages.

94. As a direct and proximate result of the wrongful acts and omissions Defendant, CoreCivic, described above, Plaintiff, T.L., suffered serious bodily injuries, pain and suffering, shock, extreme emotional distress, and humiliation.

### Count VI – Plaintiff C.J.'s Loss of Consortium Claim Against the Defendants

95. Plaintiffs hereby incorporate by reference paragraphs 1 through 94 of their Complaint for Damages and Jury Demand as if fully set forth herein.

96. As a direct and proximate result of Defendants' wrongful acts as set forth above, Plaintiff, C.J., has suffered the loss of her husband's household services, companionship, and affection.

97. As a direct and proximate result of Defendants' negligence, Plaintiff, C.J., has been damaged.

WHEREFORE, Plaintiffs, T.L. and C.J. request the following relief:

    a. An award of compensatory damages based on Plaintiffs' 42 U.S.C. § 1983 claims for the violation of T.L.'s constitutional rights;

    b. An award of punitive damages against Defendants based on Plaintiff's 42 U.S.C. § 1983 claims to punish Defendants for its callous and/or reckless indifference to T.L.'s constitutional rights;

    c. An award of compensatory damages against Defendants for the injuries the Plaintiffs have endured;

    d. An award of attorney fees and expenses pursuant to 42 U.S.C. § 1988;

    e. Trial by jury; and

    f. All other relief just and proper in the premises.

        Respectfully submitted,

        **WAGNER REESE, LLP**

        */s/ Stephen M. Wagner*
        Stephen M. Wagner, #18248-49
        Laura W. Swafford, #32792-29
        11939 North Meridian Street, #100
        Carmel, IN 46032
        Tel: (317) 569-0000 / Fax: (317) 569-8088
        swagner@wagnerreese.com
        lswafford@wagnerreese.com
        *Attorneys for Plaintiffs*

## JURY DEMAND

Come now Plaintiffs, T.L. and C.J., by counsel, hereby demand trial by jury against the Defendant on all issues set forth in this cause of action.

Respectfully submitted,

**WAGNER REESE, LLP**

*/s/ Stephen M. Wagner*
Stephen M. Wagner, #18248-49
Laura W. Swafford, #32792-29
*Attorneys for Plaintiffs*